IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**JERRY THOMPSON, et al.**,

    Plaintiffs,

    v.

**THE BANK OF NEW YORK MELLON, et al.**,

    Defendants.

No. 3:12-cv-00066-MO

OPINION AND ORDER


    **MOSMAN, J.**,

Plaintiffs brought this suit to stop the foreclosure of their home. The three named defendants, The Bank of New York Mellon, f/k/a The Bank of New York as Trustee for the Certificate Holders of the CWABS, Inc. Asset-Backed Certificates, Series 2004-7 ("BNYM"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and ReconTrust Company ("ReconTrust"), moved to dismiss [9] under Fed. R. Civ. P. 12(b)(6). Because I conclude plaintiffs' claims either fail as a matter of law or fail to satisfy basic pleading requirements, I grant the motion to dismiss.

1 – OPINION AND ORDER

## BACKGROUND

Pamela Thompson and her late husband, Jerry Thompson, Sr., received a loan of $162,400.00 from Gateway Financial Services ("Gateway") on or about July 26, 2004.[1] To obtain the loan, they executed a promissory note in favor of Gateway. The note was secured by a deed of trust, or "trust deed," on their property, which was dated July 26, 2004, and was recorded on July 30, 2004. The DOT identified Gateway as "Lender." It identified MERS as "the beneficiary under this Security Instrument" and "nominee for Lender and Lender's successors and assigns." Trust Deed at 2.[2] It identified Ticor Title as the "Trustee." Plaintiffs defaulted sometime in 2007. On August 4, 2011, MERS assigned all beneficial interest under the trust deed to BNYM and BNYM appointed ReconTrust as successor trustee under the DOT. These transactions were recorded on August 8, 2011, and, that same day, ReconTrust commenced non-judicial foreclosure proceedings by recording a Notice of Default and Election to Sell. Plaintiffs sued to stop the foreclosure process.

## DISCUSSION

Plaintiffs' complaint includes five claims for relief. First, they seek declaratory relief that defendants violated the Oregon Trust Deed Act ("OTDA"). Second, plaintiffs seek declaratory relief that defendants violated 26 U.S.C. § 860. These two claims are expressly premised on the theory that MERS cannot be a "beneficiary" under the OTDA. (Notice of Removal [1] Ex. 1 at 9–12). Third, plaintiffs raise a claim for "improper accounting," alleging the dollar figures identified in the Notice of Default and Election to sell are incorrect. All but a few paragraphs of

---

[1] This factual summary is based on the allegations in the complaint, the exhibits attached to the complaint, and documents referenced in the complaint that defendants submitted. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[2] For the sake of simplicity, I cite to the trust deed at issue in this case as "Trust Deed" throughout this opinion. It is Exhibit 1 of Exhibit 2 to the Notice of Removal [1-1].

2 – OPINION AND ORDER

an unidentified fourth claim are omitted. There is a fifth claim for quiet title but the text of that claim is also omitted from the complaint. It appears that pages are missing. Defendants were never served with the missing pages and plaintiffs have not provided or explained them. I first address whether MERS is a proper beneficiary under the OTDA and the trust deed, and then address plaintiffs' claims.

## I.     MERS as Beneficiary[3]

Plaintiffs argue that only the original lender, here Gateway, qualifies as a "beneficiary" under the OTDA. Therefore, they continue, MERS's purported 2011 assignment of the trust deed's beneficiary interest fails. And, they add, since Gateway likely transferred its interest under the promissory note and the trust deed before 2011, there must be unrecorded assignments of the beneficiary interest, which precludes non-judicial foreclosure under Or. Rev. Stat. § 86.735(1).

In *Beyer v. Bank of America*, 800 F. Supp. 2d 1157 (D. Or. 2011), I rejected these same arguments, relying on the statutory definition of "beneficiary" and the terms of the trust deed. "'Beneficiary' means the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given." Or. Rev. Stat. § 86.705(1) (2010).[4] The "benefit" of the trust deed, I reasoned, is that the obligation owed under the trust deed—the obligation to pay the promissory note—be performed. 800 F. Supp. 2d at 1161. Based on the following "law or custom" clause in the trust deed, I concluded that "MERS is both named and designated as the person receiving th[at] benefit":

---

[3] This discussion assumes familiarity with MERS and the typical form trust deeds used by MERS and its member lenders. *See Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1038–40 (9th Cir. 2011) (explaining MERS's background and role).

[4] This definition was recently amended but the new definition only applies to sales for which notice was sent on or after January 1, 2012. Or. Laws. Ch. 712 § 5(1) (2011). Accordingly, I only address the pre-2012 definition here, and express no opinion on whether the amendments substantively alter the meaning of "beneficiary."

3 – OPINION AND ORDER

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing and cancelling this Security Instrument.

*Id*. This clause applied, I reasoned, because the trust deed identified MERS as beneficiary, a statement that "would not comply with law or custom unless MERS's powers were expanded to include the right to receive payment of the obligation." *Id*. And nothing in Oregon law or the trust deed prevented MERS from being a beneficiary. *Id*. Accordingly, I found that MERS was a proper beneficiary "[b]ecause the trust deed names MERS as the beneficiary and MERS has the right to receive the benefit of the trust deed." *Id*. at 1162.

Since *Beyer* there has been no ruling from an Oregon appellate court on this issue. But, based on *James v. ReconTrust Co.,* 11-cv-00324-ST, 2012 WL 653871 (D. Or. Feb. 29, 2012), plaintiffs argue I should reconsider my prior analysis. In *James*, Judge Simon concluded identical trust deed language did not make MERS a "beneficiary" and specifically rejected the *Beyer* reasoning. Judge Simon found *Beyer*'s analysis in conflict with the text of the law or custom clause, likely to lead to "incongruous results," and based on circular reasoning. 2012 WL 653871, at *16–18. I will discuss these three points in turn.

    A. <u>Text of the Law or Custom Clause</u>

The trust deed expressly defines MERS as beneficiary (and nominee for the lender) and "secures to Lender . . . the repayment of the Loan . . . and . . . the performance of Borrower's covenants and agreements under this Security Instrument and the Note." Trust Deed at 4. One of these "covenants" is that the "Borrower shall pay when due the principal of, and interest, on, the debt evidenced by the Note." *Id*. Thus, the trust deed includes a right to payment under the

note. Whether MERS has that right is controlled by the law or custom clause, which, again, provides as follows:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing and cancelling this Security Instrument.

*Id*.

*James* found that the text of this clause does not make MERS a "beneficiary" because the clause does not provide MERS with the right to collect payments that come due under the note. 2012 WL 653871, at *17. Therefore, Judge Simon concluded, the law or custom clause does not provide MERS with the "benefit" of the trust deed. *Id*. According to *James*, the phrase "those interests" limits MERS's authority under the trust deed to exercising "interests" a borrower expressly "grants" in the trust deed, and the only clause in which the borrower "grants" something that qualifies as an "interest" is the following clause: "Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property." *Id*.; Trust Deed at 3. Therefore, *James* concluded, MERS has the power of sale, but nothing more. *Id*.

This narrow reading of the clause does not align with rules of contract interpretation. Most importantly, it ignores the parties' intent by precluding MERS from playing a role the parties expressly stated they wanted MERS to play and precluding a contractual arrangement all parties agreed on. *See* Trust Deed at 2 ("MERS is the beneficiary under this Security Instrument . . . The beneficiary of this Security Instrument is MERS."). It is therefore inconsistent with the fundamental goal of contract interpretation. *CACV of Colo., LLC v. Stevens,* 07-5265CV, 2012 WL 839259, at *10 (Or. Ct. App. Mar. 14, 2012) (noting the "fundamental premise under Oregon law that the intent of the parties to a contract controls a court's interpretation of it");

5 – OPINION AND ORDER

*Dalton v. Robert Jahn Corp.*, 146 P.3d 399, 408 (Or. Ct. App. 2006) ("In interpreting contract provisions, we attempt to discern the intent of the parties in light of the circumstances that existed when the agreement was reached."). It is also inconsistent with the principle that specific contract provisions should be read in light of the contract as a whole. *See Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997) (explaining that a court construing a contract must consider "the context of the document as a whole").

Another problem with *James*'s reading of the clause is that it is difficult, if not impossible, to align with the text of the law or custom clause. The "including, but not limited to" phrase makes clear that the power of sale and right to foreclose are examples of MERS's rights and not, as *James* indicates, the exclusive power MERS receives. And it is difficult to see how the "right" to foreclose is among "those interests" that are "granted" by the borrower, but the "right" to receive payments is not. If the idea is that a borrower lacks an "interest" in receiving his own payments for a loan, the same can be said of a borrower's "interest" in foreclosing on his own property.

In my view, the better reading of the law or custom clause is that, when necessary, it confers upon MERS (as nominee)[5] all rights the lender would otherwise receive via the trust deed, including the right to receive payment. In other words, it simply uses interchangeably the concepts of "interests granted by a borrower" and "rights received by a lender." That interpretation better aligns with the parties' intent and the trust deed as a whole because it allows MERS to serve as beneficiary when necessary, an arrangement for which both parties expressly contracted. Furthermore, it makes better sense of the text of the law or custom clause.

---

[5] In *James*, Judge Simon did not assert that MERS's "nominee" status under a trust deed somehow precludes MERS from also having a "beneficiary" status. As I explained in *Beyer*, there is no reason MERS cannot be both a nominee and the beneficiary. 800 F. Supp. 2d at 1162.

B.  *Potentially "Incongruous Applications"*

The second reason in *James* for rejecting *Beyer* is that if MERS does have the right to receive payment, a "variety of incongruous applications" could follow. 2012 WL 653871, at *17. Specifically, borrowers might send payments to MERS instead of the note holder, and MERS might even assert that the note holder is not entitled to payment. *Id*. While I agree with Judge Simon that there is the potential for confusion from MERS's role, I disagree that it warrants reading the law or custom clause in a way that the parties did not intend it to be read. Perhaps most importantly, there is no evidence that events like those posited in *James* are happening. And there are good reasons to think they will not. The trust deed specifies that payments must be sent to the location identified in the note, unless an alternative location is later designated. Trust Deed at 4. Thus, unless MERS began directing payments to itself, a borrower would not satisfy its obligations under the trust deed by sending payments to MERS. The chance of MERS telling a borrower to pay MERS (instead of the lender) and then contesting the lender's ultimate entitlement to payment seems highly unlikely in light of MERS's status as nominee for the lender and MERS's contractual arrangements with its members.[6]

C.  *Circularity of Beyer's Reasoning*

The third reason in *James* for rejecting *Beyer* is that *Beyer* "relies on the premise that MERS must be the beneficiary in order to prove the conclusion that MERS is the beneficiary." 2012 WL 653871, at *17. While *James* suggested *Beyer* therefore suffers from circular reasoning, I disagree. Simply put, the reasoning of *Beyer* is that the contracting parties successfully designed a fallback clause whereby MERS becomes the beneficiary when it must do

---

[6] The fact that MERS may have other contractual arrangements that limit its authority to exercise its right to receive payments under the trust deed does not alter my conclusion that MERS is a proper beneficiary. Regardless of these other arrangements, MERS has the right to receive payment *under the trust deed*, which I view as the dispositive issue for OTDA purposes.

7 – OPINION AND ORDER

so in order to comply with local law or custom. There is nothing circular about a contract that labels the parties one way in some circumstances but another way in others, and a decision is not circular merely because it gives effect to such a contract.[7]

The three specific critiques in *James*, discussed above, involve a difference of opinion about interpreting the terms of the standard MERS trust deed. I also disagree with *James*'s interpretation of the OTDA. *James* and *Beyer* both held that a party is the beneficiary of the trust deed only if the trust deed entitles that party to payment on the note. *Beyer*, 800 F. Supp. 2d at 1161; *James*, 2012 WL 653871, at *9. *James*, however, went on to hold that the party entitled to payment of the note is necessarily and exclusively the holder of the note. 2012 WL 653871, at *11. *Beyer*, on the other hand, held that a party may be a beneficiary under the trust deed if, via contractual arrangements like the one at issue, the parties agree that the benefit of the trust deed flows to a party who is not the note holder. In my view, *Beyer* better aligns with the statutory definition of "beneficiary," which expressly looks to the trust deed and not the note. Or. Rev. Stat. § 86.705(1)(2010) ("'Beneficiary' is the person named or otherwise designated *in a trust deed* as the person for whose benefit *a trust deed is given*.") (emphasis added).[8]

---

[7] While not clearly a distinct reason for rejecting *Beyer*, the *James* decision added that "[t]he conflict between the provision of the trust deed stating that MERS is the beneficiary and the statutory provisions in the OTDA need not be resolved by resorting to the law or custom clause" because "the proper resolution is to decide, as the OTDA directs, what party is named or designated in the trust deed as the person for whose benefit the trust deed was given, irrespective of what party the trust deed says is the beneficiary." 2012 WL 653871, at *18. I disagree with this point for two reasons. First, construed properly, there is no conflict between the provisions identifying MERS as beneficiary and the OTDA. Second, the question of what party is named or designated in the trust deed as the person for whose benefit the trust deed was given is a question that logically requires looking to all the terms of the trust deed, including the law or custom clause.

[8] *James* effectively substitutes the following for a definition of "beneficiary": "The person named or otherwise designated *in the note* as the person for whose benefit *the note is given*." While *James* reasons that other provisions and case law imply the beneficiary must be the note holder, I am not persuaded that these other sources warrant straying from the terms used in the OTDA's beneficiary definition.

8 – OPINION AND ORDER

Moreover, *Beyer'*s holding aligns better with the legislative intent behind the OTDA.  I agree with *James* that the OTDA generally aims to "balance convenience for creditors with protections for borrowers."  2012 WL 653871, at *5.  Reading the OTDA and the trust deed to allow MERS to serve as beneficiary logically advances creditor convenience, improves efficiency, and lowers the cost of lending, which benefits lenders and borrowers alike.  Meanwhile, any countervailing harm to borrowers remains unexplained.  *See Beyer*, 800 F. Supp. at 1162 (reasoning that MERS's role "creates no practical harm for the Beyers").  On the other hand, the interpretation announced in *James* impairs interests in convenience and efficiency, with no apparent gains for a borrower.[9]

For these reasons, I respectfully decline to adopt the analysis in *James* and re-affirm my holding in *Beyer*.  *See also Stolz v. OneWest Bank, FSB,* 11-cv-00762-HU, 2012 WL 1093712, at *3 (D. Or. Mar. 30, 2012) (finding MERS to be a proper beneficiary under the OTDA, despite analysis in *James*); *Graham v. ReconTrust Co.,* 11-cv-1339-BR, 2012 WL 1035712, at *4 (D. Or. Mar. 27, 2012) (same); *White v. Bank of America, N.A.*, 11-cv-1209-ST, 2012 WL 1115866, at *2 (D. Or. Mar. 6, 2012) (same); *Sovereign v. Deutsche Bank*, 11-cv-995-BR, 2012 WL 724796, at *8 (D. Or. Mar. 5, 2012) (same).

## II.  Plaintiffs' Claims

Plaintiffs' first and second claims are based on the theory that MERS cannot be a beneficiary under Oregon law.  Likewise, plaintiffs' fifth claim, for quiet title, simply re-alleges all prior allegations, and I can only assume it is based on the same theory since plaintiffs have not otherwise explained it.  Accordingly, these claims fail.  The complaint includes a few

---

[9] It also contradicts the public interest in the freedom to contract.  *See, e.g., In re Marriage of McInnis,* 110 P.3d 639, 642 (Or. Ct. App. 2005) ("It is axiomatic that public policy requires that persons of full age and competent understanding shall have the utmost liberty of contracting.") (quoting *In re Marriage of McDonnal*, 652 P.2d 1247, 1251 (Or. 1982)).

9 – OPINION AND ORDER

paragraphs of a fourth claim, which was otherwise omitted from the complaint. It is impossible to discern the basis for this claim from the complaint itself and plaintiffs' briefing does not clarify what this claim might be, although it mentions violations of New York trust law. This claim fails because it is literally not pled in the complaint. Moreover, the briefing and the few paragraphs of this claim that do appear in the complaint indicate it too is premised on the theory that MERS cannot serve as beneficiary under Oregon law and the theory that transfers in a promissory note invalidate any later transfer of the trust deed. I rejected both theories in *Beyer* and do so again today. *See Beyer*, 800 F. Supp. at 1159–62. Accordingly, this claim fails as well. Lastly, there is a claim for improper accounting but it only alleges that the Notice of Default and Election to Sell misstated the outstanding loan balance. Without more, this claim is conclusory and therefore fails. Plaintiffs have made no effort in their briefing to explain this claim further.

## CONCLUSION

I GRANT the motion to dismiss [9] and the request for judicial notice [11] and dismiss plaintiffs' complaint in its entirety. The claims are dismissed with prejudice because all but the improper accounting claim are based, either directly or indirectly, on the theory that MERS is not a valid beneficiary under Oregon law. The improper accounting claim is dismissed with prejudice because, despite several opportunities, plaintiffs have not alleged in anything more than a conclusory fashion that there was an error in the Notice of Default and Election to Sell.

IT IS SO ORDERED.

DATED this ___12th___ day of April, 2012.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court